CZARNECKI et al., Appellees,

v.

BASTA et al., Appellants.

[Cite as *Czarnecki v. Basta* (1996), 112 Ohio App.3d 418.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69092.

Decided July 8, 1996.

*Carr, Feneli & Carbone* and *Dale C. Feneli,* for appellees.

*Andrew W. Hoffman,* for appellants.

PATRICIA ANN BLACKMON, Presiding Judge.

Defendants-appellants, Paul and Debora Basta, appeal from a jury verdict awarded in favor of plaintiffs-appellees, Alexander Czarnecki and Pamela Lane, and assign the following errors for our review:

"I. The trial court's failure to properly instruct the jury on critical issues was prejudicial to defendants.

"II. The court erred to the prejudice of defendants by admitting evidence of damages which violated Ohio Evid.R. 1006.

"III. The jury's verdict awarding $30,000 in damages was against the manifest weight of the evidence.

"IV. The award of attorney fees was erroneous."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm in part and reverse in part the decision of the trial court. The apposite facts follow.

Alexander Czarnecki and Pamela Lane were both employed at Cosmo Plastics when they decided to look for a two-family house to purchase. Lane was looking for a place to live and Czarnecki was interested in investing in real estate. After they contacted a realtor, they learned that their coworkers, Paul and Debora Basta, had a two-story two-family house for sale located at 1215 Rowley Avenue in the city of Cleveland.

On March 28, 1990, Czarnecki, Lane, and their realtor, Ruth Mather, went on an inspection tour of a house led by Paul Basta. Neither Czarnecki, Lane, nor Mather noticed any visible signs of water damage. Lane and Mather did, however, notice that the second floor had an unusual odor. Czarnecki did not detect the odor. Lane said that it smelled like "older people" and associated it with Basta's mother who lived on the second floor. Mather, notwithstanding her experience as a realtor, did not recognize the odor, nor did she associate it with water damage. Czarnecki, Lane, and Mather did notice that many of the walls had been freshly painted.

Paul Basta guided them through the house, but did not show them the attic crawl space above the second floor, nor did he make them aware of its existence. During the tour, Czarnecki, Lane, and Mather asked Basta whether the roof leaked, and he told them, "no." Basta also told Czarnecki that "the roof's in pretty good shape."

On that same day, Czarnecki, Lane, and Mather drafted a purchase agreement. After the Bastas accepted the purchase agreement, they filled out a disclosure form. The form stated, "I understand that I may be held responsible by a purchaser for any latent or hidden, undisclosed defects in, on or upon my property which are known to me but which are not disclosed to the purchaser at the time of sale. These include, without limitation, * * * problems with * * * roof * * * or needed repairs to these or any other items should be brought to the purchaser's attention." Paul and Debora Basta both signed the form and indicated that there were no latent defects in the house to be disclosed. Czarnecki and Lane subsequently purchased the house for $25,500.

Czarnecki moved into the house on or about June 6, 1990. He spent a week sleeping on the second floor of the house by himself. In one of the closets, he discovered that the Bastas had left some old clothes. When he removed the clothes, he noticed the wall in the back of the closet was bulging. During that week, he developed a burning skin irritation from something in the house and had to move out. Czarnecki subsequently discovered that the source of the skin irritation was approximately thirty to forty "Stick-up" brand air fresheners hidden throughout the second floor of the house.

On or about June 16, 1990, Lane moved into the first floor of the house. On June 22, 1990, there was a very heavy rain and Lane saw water coming through her dining room and living room ceilings, which had been recently stuccoed and painted by Basta. Initially, she did not associate the leaking ceiling with the rain outside. She went upstairs to see if there was running water overflowing in the kitchen or the bathroom, but there was none.

Czarnecki and Lane began to investigate to find the source of the water. They looked in the bedroom closet where the wall was bulging. Czarnecki applied a little pressure to the wall and the whole wall collapsed between the bedroom closet and the kitchen. The collapsed wall exposed a wooden beam in the wall. Czarnecki grabbed the beam and it came apart in his hand. Czarnecki also noticed that his kitchen floor shook when his sister's twenty-pound dog ran across the floor. Czarnecki also noticed that the floor started to "belly" and became weaker.

Czarnecki got a ladder and went up into the attic crawl space with a lamp and an extension cord. Most of the boards supporting the shingles and the two-by-four lumber supporting the roof were rotten. The rotten two-by-four lumber was braced by newer lumber to support it. The portion of the chimney exposed in the attic was covered with black tar paint and the attic floor was covered with roofing paper. He also noticed that part of the roof structure was charred. His inspection of the attic crawl space revealed that the roof was the source of the leak.

The leaking was so extensive that during heavy rains during the month of June and July 1990, Lane had to keep nine five-gallon buckets and a small baby pool placed throughout her living room and dining room to catch the dripping water. Her ceilings were spotted and her light fixture covers filled up with water. The ceilings that had been freshly painted and stuccoed when Lane first looked at the house were the same ones that were leaking water. Eventually, the plasterboard and stucco on her living and dining room ceilings started crumbling and falling off.

Czarnecki and Lane contacted roofing contractors to get estimates on repairing the roof. One roofing contractor refused to give an estimate on the repair because their engineer did not feel it was safe for their men to work on the roof. Another contractor gave an estimate of $15,000 to repair the roof. A short time after they discovered the problem with the roof, Czarnecki lost his job at Cosmo Plastics, and he and Lane were unable to pay to have the roof repaired.

Czarnecki and Lane filed an action against Paul and Debora Basta for fraudulent misrepresentation. The case proceeded to trial. Czarnecki and Lane presented two experts at trial. John Marrelli, Jr., had nineteen years of experience in home inspections. He testified that the water damage leading to the problems experienced by Czarnecki and Lane could not have occurred in the short time they lived in the house because the type of deterioration he found would have taken years. James Stegmeyer was employed as an estimator for Yanesh Brothers Construction. He used an "Xactimate" computer program to estimate the amount of damages. He estimated the minimum cost for repairing the damage was $23,531.13.

The jury returned three verdict forms and found for the plaintiffs for $30,000 for compensatory damages, $0 for punitive damages, and held that the Bastas should be held liable for attorney fees. The trial court awarded the plaintiffs an additional $11,571.50 in attorney fees. This appeal followed.

■ In their first assignment of error, the Bastas argue that the trial court erred in failing to instruct the jury on critical issues. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828. Jury instructions, however, should be given if reasonable minds might reach the conclusion sought by the instruction.

■ The Bastas assert that the trial court erred in refusing to give an instruction on *caveat emptor*. "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the

premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus. See, also, *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 18 OBR 403, 481 N.E.2d 1193. In this case, the evidence presented involved latent, concealed defects and fraudulent representations on the part of the Bastas. Therefore, the doctrine of *caveat emptor* did not apply and an instruction on the issue was not supported by the facts in this case.

■ The Bastas also argue that the trial court erred in refusing to give an instruction on the mitigation of damages. The doctrine of mitigation of damages is intended to prevent an inclusion in the damage award of damages that could have been avoided by reasonable affirmative action by the injured party without substantial risk to such party. *S–Products, B.V. v. Noral, Inc.* (Nov. 19, 1992), Cuyahoga App. No. 61347, unreported, 1992 WL 354836.

■ In this case, the Bastas based their request for an instruction on mitigation of damages on the testimony of James Stegmeyer. Stegmeyer estimated that it would have cost $2,000 to merely stop the leak near the roof dormer which was the major source of the roof leaking. He did not, however, testify that this repair would have minimized further damages between the time of his inspection and trial.

At the time of inspection the major damage was already done. The roof was not structurally sound and the walls, ceilings and floors were already damaged. Furthermore, Marrelli testified that the major damage occurred over a period of years before Czarnecki and Lane moved into the house. Therefore, the evidence presented to the jury did not support an instruction on mitigation of damages. Accordingly, we find that the trial court properly refused to instruct the jury on the doctrines of *caveat emptor* and mitigation of damages.

In their second assignment of error, the Bastas argue that the trial court erred in admitting the evidence of damages. "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. Appellate review is limited to a determination of whether the lower court abused its discretion. *E.g., Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292. The term "abuse of discretion" connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *E.g., Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141.

■ The Bastas assert that the trial court erred in admitting Stegmeyer's repair summary because it violated Evid.R. 1006. While an expert may rely on

summaries of facts and data admitted into evidence under Evid.R. 1006, an expert opinion may also be based upon facts or data perceived by the expert under Evid.R. 703. See *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118. In this case, Stegmeyer inspected the house and was personally familiar with the costs of certain materials and labor even though he used a computer program called "Xactimate" to calculate the estimate. Therefore, the estimate was based upon facts or data perceived by the expert himself, and the trial court did not abuse its discretion in admitting Stegmeyer's estimate.

The Bastas assert that the trial court erred in admitting the testimony of Czarnecki and Lane that they received an estimate of $15,000 for the roof repair because it was hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." Evid.R. 801(C). Where a statement is offered without reference to its truth, it is not hearsay. *State v. Lewis* (1970), 22 Ohio St.2d 125, 51 O.O.2d 209, 258 N.E.2d 445. Statements which are offered to explain a person's conduct are not hearsay. See *State v. Price* (1992), 80 Ohio App.3d 108, 608 N.E.2d 1088 (police officer's statements during investigation of a crime not hearsay when not offered to prove truth of the matter asserted). In this case, Czarnecki and Lane testified that they did not get the roof repaired because they thought it would cost $15,000. Their testimony was not offered to prove the extent of the damages, but offered to explain their conduct in trying to get the roof repaired. Accordingly, the trial court did not abuse its discretion in admitting testimony that Czarnecki and Lane received a repair estimate of $15,000.

In their third assignment of error, the Bastas argue that the jury award was against the manifest weight of the evidence. Judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *E.g., Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276.

The Bastas argue that there is no evidence of fraud. However, the evidence reveals that Paul Basta told Czarnecki that the roof was in good shape. Paul and Debora Basta also stated in a written disclosure form that there were no latent defects. Marrelli testified that the roof, which was in poor condition, had deteriorated over a period of years prior to the sale of the house. Furthermore, the placement of thirty to forty "Stick-ups" in the second floor was a clear indication that the Bastas knew that there was a problem on the second floor. Accordingly, there was sufficient evidence to support the claim of fraudulent misrepresentation.

██ The Bastas also argue that the $30,000 verdict was in excess of the quotation of repairs. However, Stegmeyer testified that $23,531 was the minimum cost of repairs, and there could be much more in need of repair once the work began. Thus, it was proper, based upon the evidence of extensive damages, for the jury to award in excess of Stegmeyer's estimate.

██ In their fourth assignment of error, the Bastas argue that attorney fees were not warranted. Attorney fees may be awarded as compensatory damages only where punitive damages have been found. *Griffin v. Lamberjack* (1994), 96 Ohio App.3d 257, 266, 644 N.E.2d 1087, 1092. See, also, *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737. In this case, the jury awarded $0 for punitive damages. Therefore, it was error for the trial court to award attorney fees. Accordingly, the trial court's award of attorney fees is reversed.

The judgment is affirmed in part and reversed in part.

*Judgment accordingly.*

DYKE and NAHRA, JJ., concur.