The STATE of Ohio, Appellee,

v.

MASON, Appellant.

[Cite as *State v. Mason* (2001), 143 Ohio App.3d 114.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77786.

Decided April 23, 2001.

*William D. Mason,* Cuyahoga County Prosecutor, and *James A. Gutierrez,* Assistant Prosecutor, for appellee.

*Kevin J. Gibbons,* for appellant.

FRANK D. CELEBREZZE, JR., Judge.

The appellant, Maxine Mason, appeals the jury verdict finding her and her codefendant guilty on all counts of a three-count indictment. For the reasons set forth below, we affirm.

On November 12, 1998, Keith Golar entered the Ohio license bureau located at 9300 Wade Park, Cleveland, Ohio, to obtain a fake state identification card. Golar testified that he was instructed by his bookie, "K.T.," to enter the bureau and look for a light-skinned black female. After finding a women matching this general description, Golar was told to go to her and tell her, "K.T. sent me," and the woman would ˙help him procure a fake state identification card using information given to Golar by "K.T."

Upon entering the bureau, Golar looked around and determined that the appellant, Maxine Mason, fit the description better than any other worker. He then approached her and told her, "K.T. sent me." When she did not respond, he told the appellant that he needed a State of Ohio identification card. The appellant at that time told the women next to her, codefendant Cynthia Underwood, to give Golar an application for a state identification card.

Golar filled out the application using the social security number and birth date of a Randall Gunlock. Golar returned the application to Underwood, who promptly processed the application under the name of Randall Gunlock. The appellant did not process the application, but she did take Golar's picture for the state identification card. After taking Golar's picture, the appellant told him to go sit down and wait for the I.D. card to be finished.

After Golar received the fake state I.D. under the name of Randall Gunlock, he used it to withdraw large sums of money from Randall Gunlock's bank accounts at several branches of Key Bank.

Golar was later apprehended and became a witness for the state. On March 24, 1999, the appellant, Maxine Mason, and codefendant, Cynthia Underwood, were indicted on a three-count indictment. They were both charged with

unauthorized access to a computer system in violation of R.C. 2913.04, forgery, in violation of R.C. 2913.31, and tampering with records, in violation of R.C. 2913.42.

On January 3, 2000, a jury trial commenced. On January 14, 2000, the jury found both defendants guilty on all three counts. Both defendants were sentenced to three years of community control sanctions. Appellant timely filed a notice of appeal asserting the following assignments of error:

"I. The trial court erred when it allowed the state, over defendant–appellant's objection, to present hearsay evidence that connected the defendant–appellant to the crimes charged in violation of the rules of evidence and the defendant–appellant's constitutional rights as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"II. Prosecutorial misconduct while cross–examining defense witness Gregory Perrin was improper, prejudicial and deprived defendant–appellant of her rights to a fair trial, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section 16 of the Ohio Constitution. The instruction from the court was not sufficient to cure the harm caused by the misconduct.

"III. The trial court committed prejudicial error in its charge to the jury on the issue of accomplice testimony concerning Keith Golar by failing to give the instruction required by R.C. 2923.03(D) as requested by the defendant and by failing, in the alternative, to give a proper limiting instruction concerning this testimony.

"IV. Defendant's conviction for (1) tampering with records—2913.42 (2) unauthorized access to a computer system—2913.04; and (3) forgery—2913.31 was against the manifest weight of the evidence, thereby denying defendant her right to a fair trial and due process of law in violation of the Sixth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Sections 10 and 16 of the Ohio Constitution.

"V. Where the state of ohio fails to present evidence sufficient to prove the charges of (1) tampering with records—2913.42; (2) unauthorized access to a computer system—2913.04; and (3) forgery—2913.31 beyond a reasonable doubt, the defendant is wrongly convicted."

In her first assignment of error, the appellant alleges that the trial court erred when it allowed the state to present hearsay evidence connecting her to the crime charged. This first assignment of error is without merit.

Kevin Golar testified that the reason he went to the Wade Park bureau of motor vehicles was a statement made to him by his bookie, "K.T."—that is, to go to the Wade Park bureau of motor vehicles to obtain a fake state identification

card.  Golar was to obtain the fake I.D. from a light-skinned black woman who worked there.

Defense counsel objected to the statement, claiming that the statement constituted hearsay and therefore should not be allowed in as evidence.  The court overruled the objection and then issued a cautionary instruction to the jury which stated:

"Normally, witnesses may not testify from the witness stand on what people said to them out of court on a prior day, normally.  However, this testimony of Mr. Golar's that he went to this particular place because this K.T. told him to is not being admitted for its truth.  In other words, when you hear the witness say he went to Wade Park because K.T. told him to, that's his explanation, but that is not evidence that anyone named K.T. in fact told Mr. Golar that.

"Do you understand the distinction?  So you still don't have any evidence that in fact K.T. told Mr. Golar that, to go there.  That's simply Mr. Golar's explanation of why he went to that spot."

■  The judge informed the jury that the statements were not to be considered to prove the truth of the matter asserted.  The jury is presumed to have followed the judge's cautionary instruction in the absence of evidence to the contrary.  *State v. Bostwick* (February 24, 2000), Cuyahoga App. No. 75124, unreported, 2000 WL 218381.

■  As a general rule, a trial court is granted broad discretion in the admission or exclusion of evidence and the manner of examination. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008.  "A reviewing court shall not reverse a trial court's evidentiary rulings absent a showing that the trial court abused its discretion."  *Yacobucci v. Sazima* (Dec. 14, 1989), Cuyahoga App. No. 55892, unreported, at * 4, 1989 WL 151315, at * 1, citing *Calderon v. Sharkey*, at 219–220, 24 O.O.3d at 323–324, 436 N.E.2d at 1010–1011. Abuse of discretion "connotes more than an error of law or of judgment;  it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855.  In order for there to be an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313, quoting *Spalding v. Spalding* (1959), 355 Mich. 382, 384–385, 94 N.W.2d 810, 811–812.

■  In reviewing the testimony provided by Golar that allegedly constituted hearsay, this court concludes that the statement was not offered to prove the

truth of the matter asserted. The testimony was used solely to show why Golar went to the bureau of motor vehicles at 9300 Wade Park, Cleveland, Ohio.

This court has repeatedly determined that statements used to explain a person's conduct are not considered hearsay. *Bostwick,* citing *Czarnecki v. Basta* (1996), 112 Ohio App.3d 418, 424, 679 N.E.2d 10, 13–14, citing *State v. Price* (1992), 80 Ohio App.3d 108, 608 N.E.2d 1088. In *Bostwick,* the trial court allowed a police officer to testify regarding information received by the officer via his police scanner. The information contained the description of an individual wanted in connection with a car accident. The testimony was followed by a cautionary instruction to the jury by the trial judge on how the testimony was to be interpreted.

In *Bostwick,* this court determined that the description of the suspect and the location where an individual had been found as conveyed to the officer "were not used to demonstrate the veracity of the statements but to explain the officer's actions after receiving the transmission." *Bostwick,* Cuyahoga App. No. 75124, unreported, at * 15, 2000 WL 218381, at * 5. This court further determined that the statements complained of by the appellant were used to explain the subsequent conduct of the officers, and therefore, the statements were not hearsay. *Id.*

Accordingly, in the case at bar, the trial court did not abuse its discretion in allowing the testimony of Golar regarding K.T.'s statements, and any error made by the trial court in sustaining appellant's objection to the testimony was harmless error.

In appellant's second assignment of error, she claims that the conduct of the prosecutor in cross-examining defense witness Gregory Perrin constituted prosecutorial misconduct and that this misconduct was not cured by the trial court's instruction to the jury, thereby depriving the appellant of her right to a fair trial. The second assignment of error is without merit.

Generally, the conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct leads to the defendant's being deprived of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced the appellant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In determining whether or not the appellant received a fair trial, this court must find, absent the improper questions or remarks, that the jury still would have found the appellant guilty. *State v. Borden* (Oct. 26, 2000), Cuyahoga App. No. 77488, unreported, at * 5, 2000 WL 1594576, at * 2, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402–403, 473 N.E.2d

768, 792–793. The test for prosecutorial misconduct is whether the remarks were improper, and if so, whether the rights of the accused were materially prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. Furthermore, "[u]nder a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different." *State v. Borden*, citing *State v. Kent* (1980), 68 Ohio App.2d 151, 22 O.O.3d 223, 428 N.E.2d 453; *State v. Parker* (Oct. 5, 1995), Cuyahoga App. No. 68156, unreported, 1995 WL 588764.

In this case, the appellant claims that the prosecutor wrongfully questioned Perrin about his knowledge of an ongoing investigation by the state highway patrol involving the Wade Park bureau of motor vehicles. The prosecutor's cross-examination was based, in part, on the witness's direct testimony that if there had been a problem at his particular bureau, he felt that the state highway patrol would have informed him of the situation. The prosecutor further questioned Perrin as to his knowledge of the current investigation by the state highway patrol into his bureau regarding a tremendous number of fake I.D.s being issued from that location.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Id.*, citing, *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87–88, *State v. Smith* (2000), 139 Ohio App.3d 398, 403, 744 N.E.2d 201, 205. Upon review of the transcripts of the prosecutor's cross-examination, this court cannot find his remarks and questions to be so improper that, in their absence, the jury would have found the defendant not guilty. The questioning of the witness was within the scope of cross-examination as dictated by the defense counsel's own direct examination. Any subsequent harm done to the witness or to the appellant because of the prosecutor's questions or the witness's answers do not rise to the level of substantially prejudicing the appellant. Therefore, the appellant has established no basis nor shown any evidence that the questions in any way prejudiced the appellant to an extent necessary for this court to award the appellant a new trial.

The appellant has withdrawn the third assignment of error; therefore, it need not be addressed.

In appellant's fourth assignment of error, she alleges that her conviction on all counts was against the manifest weight of the evidence, and therefore should be reversed and remanded for a new trial. Appellant's fourth assignment of error is without merit.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court stated, "The court, reviewing the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

Additionally, the Supreme Court of Ohio in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, stated, "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.'" (Emphasis deleted.)

Further, in *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, the U.S. Supreme Court stated, "A reversal based on the weight of evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict."

In the case at bar, the record demonstrates that the state made its case based upon both direct and circumstantial evidence. The evidence revealed that the actions of the appellant could not have occurred without the computer system at the bureau of motor vehicles alerting Underwood to a conflict in the system. This message, which would have been displayed on the computer screen, would have prevented any future processing of the I.D. unless manipulated by the clerk to produce an original state I.D. Therefore, the clerk involved in the fraudulent transaction would have had to have overridden the message in order to proceed with the transaction. Both appellant and codefendant have stipulated that their initials were on the form given to them by Golar. The appellant even stated that she remembered when Golar came into the bureau of motor vehicles. The only place where the stories deviate is as to whether or not Golar showed a birth certificate or a social security number when filling out the state I.D. application form.

Therefore, there is enough evidence to show that the decision of the jury did not create such a miscarriage of justice that the conviction must be reversed.

Appellant's last assignment of error alleges that the state failed to present evidence sufficient to prove the charges of (1) tampering with records, R.C. 2913.42; (2) unauthorized access to a computer system, R.C. 2913.04; and (3) forgery, R.C. 2913.31, beyond a reasonable doubt, and that therefore, the defendant was wrongly convicted.

The question before this court is whether appellant's conviction is supported by sufficient evidence.

Crim.R. 29(A) provides in part:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the court stated, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

In this case, the state assumed the burden to prove the appellant's guilt beyond a reasonable doubt on the charges of (1) tampering with records, R.C. 2913.42; (2) unauthorized access to a computer system, R.C. 2913.04; and (3) forgery, R.C. 2913.31.

For the state to find the appellant guilty on the charge of tampering with records, the state must prove all elements of the offense charged.

Specifically, R.C. 2913.42(A), tampering with records, states the following:

"No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

"(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;

"(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section.

"(B)(1) Whoever violates this section is guilty of tampering with records."

R.C. 2913.04(A), unauthorized access to a computer, states as follows:

"No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent.

"(B) No person shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network,

telecommunications device, telecommunications service, or information * * * service or other person authorized to give consent by the owner."

Finally, forgery, R.C. 2913.31 provides:

"(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:"

"(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."

In this case, the evidence presented clearly shows that all the elements of each count of the indictment were proven by the state.

The state showed that the appellant knowingly assisted in the falsification and manipulation of the bureau of motor vehicles' computer system so as to allow Golar to obtain a state I.D. in another person's name. Appellant at no time asked to see proof from Golar that he was, in fact, Randall Gunlock. Additionally, when appellant knowingly did this without consent of the owner, she also became guilty of unauthorized access to a computer system.

Finally, the action of the appellant in completing the fake state I.D. with the knowledge that the computer system had given a conflict message and without proof that Golar was Gunlock constituted forgery.

The state proved all elements of all three counts in the indictment. The evidence is such that no miscarriage of justice has occurred, and the jury properly convicted the appellant on all three charges.

*Judgment affirmed.*

BLACKMON, P.J., and KILBANE, J., concur.