JOURNAL ENTRY AND OPINION
Cynthia Underwood appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding her guilty of tampering with records, unauthorized access to a computer and forgery. She assigns the following as error for our review:
 I. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE, OVER DEFENDANT-APPELLANT'S OBJECTION TO PRESENT HEARSAY EVIDENCE THAT CONNECTED THE DEFENDANT-APPELLANT TO THE CRIMES CHARGED IN VIOLATION OF THE RULES OF EVIDENCE IN THE DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 II. PROSECUTORIAL MISCONDUCT WHILE CROSS-EXAMINING DEFENSE WITNESS GREGORY PERRIN WAS IMPROPER, PREJUDICIAL AND DEPRIVED DEFENDANT-APPELLANT UNDERWOOD TO A FAIR TRIAL, IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION 16 OF THE OHIO CONSTITUTION. THE INSTRUCTION FROM THE COURT WAS NOT SUFFICIENT TO CURE THE HARM CAUSED BY THE MISCONDUCT.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL AIR (SIC) IN ITS CHARGED (SIC) TO THE JURY ON THE ISSUE OF ACCOMPLICE TESTIMONY CONCERNING KEITH GOLAR BY FAILING TO GIVE THE INSTRUCTION REQUIRED BY ORC 2923.03(D) HAS (SIC) REQUESTED BY THE DEFENDANT-APPELLANT.
 IV. DEFENDANT'S CONVICTION FOR (1) TAMPERING WITH RECORDS — 2913.42; (2) UNAUTHORIZED ACCESS TO A COMPUTER SYSTEM — 2913.04; AND (3) FORGERY — 2913.31
WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING DEFENDANT HER RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 V. WHERE THE STATE OF OHIO FAILS TO PRESENT EVIDENCE SUFFICIENT TO PROVE THE CHARGES OF (1) TAMPERING WITH RECORDS — 2913.42; (2) UNAUTHORIZED ACCESS TO A COMPUTER SYSTEM — 2913.04; AND (3) FORGERY — 2913.31 BEYOND A REASONABLE DOUBT, THE DEFENDANT IS WRONGLY CONVICTED.
Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court.
During jury trial of Cynthia Underwood and co-defendant Maxine Mason, Keith Golar testified against them for the State. Golar admitted to various criminal acts including theft of the identification of Randall Gunlock and the taking of $41,000 from Gunlock's bank account. He admitted he received a deal from the State to testify. He then explained that he entered the Wade Park Ohio License Bureau office to obtain a State identification card in the name of Randall Gunlock. Furthermore, he implicated Underwood by stating that he was told to enter, look for a light-skinned black woman, and use the code language K.T. sent me. Golar explained that K.T. is his bookie.
Golar testified that he entered and made the statement to Maxine Mason. Getting no response, he then asked her for help and when she did not respond, she referred him to Underwood. Underwood then processed the State I.D. in the name of Randall Gunlock with Golar's photograph.
The State called three other witnesses: Ohio State Trooper, Michael Giuliano, Investigator Michael Russo, Deputy Registrar David Lasky. Giuliano testified Mason and Underwood told him they had both processed the application. Russo confirmed that Mason and Underwood had processed the application. Lasky testified if someone attempted to obtain a State identification card but already had a valid driver's license, the clerk processing the application would be alerted that a conflict in the system existed, requiring the clerk to call Columbus and to investigate the conflict.
For her defense, Underwood offered the testimony of Deputy Registrar Gregory Perrin, who testified the clerk in a situation such as this would not receive a conflict message, but rather, would be informed that the information entered was not in file.
In rebuttal, the State called Deputy Registrar Christine Shroka and BMV Field Representative Barry Solomon, who both agreed with Lasky that a conflict message would appear, and if the clerk did not contact Columbus, the conflict could be ignored and the application would still be processed. The conflict would, in essence, show that Randall Gunlock already had a driver's license. Further, investigation would have revealed that Golar is African-American, as well as a different weight and height than Gunlock.
On February 14, 2000, the jury found Underwood and Mason guilty of all three counts. The court sentenced both to three years probation. Underwood now appeals.
In her first assignment of error, Underwood urges the court erred when it allowed Golar to testify that K.T. told him to go to the Wade Park license bureau, to look for a light-skinned black woman, and tell her K.T. sent me.
We begin by noting that evidentiary rulings will not be overturned absent an abuse of discretion. Neilson v. Meeker (1996),112 Ohio App.3d 448, 679 N.E.2d 28. An abuse of discretion exists when the trial court acts unreasonably. Here, it did not.
Evid.R. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
Additionally, statements which are offered to explain a person's conduct are not hearsay. State v. Bostwick (February 24, 2000), Cuyahoga App. No. 75124, unreported, citing, Czarnecki v. Basta (1996),112 Ohio App.3d 418, 679 N.E.2d 10.
In this case, Golar testified K.T. instructed him to go to the Wade Park License Bureau, look for a light-skinned black woman, and tell her that K.T. sent him. After a defense objection, the court instructed the jury as follows:
THE COURT: * * *
 Normally, witnesses may not testify from the witness stand on what people said to them out of court on a prior day, normally.
 However, this testimony of Mr. Golar's that he went to this particular place because this K.T. told him to is not being admitted for its truth. In other words, when you hear the witness say he went to Wade Park because K.T. told him to, that's his explanation, but that is not evidence that anyone named K.T. in fact told Mr. Golar that.
Therefore, this cautionary instruction reminded the jury that the statements were not to be considered to prove the truth of the matter asserted. The jury is presumed to have followed the judge's cautionary instruction in the absence of evidence to the contrary. Bostwick, supra. Additionally, this testimony is being offered only to demonstrate how and why Golar went to the Wade Park License Bureau; it does not prove or disprove the actions of Underwood.
Therefore, we have concluded that the statements offered by Golar explaining the reason why he went to this particular license bureau does not constitute hearsay and the trial court did not abuse its discretion when it allowed the testimony. Accordingly, this assignment of error is overruled.
Underwood next alleges misconduct on behalf of the prosecutor when he cross-examined defense witness Gregory Perrin regarding other incidents of false identifications being made at the Wade Park Bureau.
The Court in State v. Apanovitch (1987), 33 Ohio St.3d 19,514 N.E.2d 394, stated that a prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. Further, in Smith v. Phillips (1982),455 U.S. 209, the Court stated:
 [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.
The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984), 15 Ohio St.3d 239,473 N.E.2d 768.
On cross-examination, the prosecutor inquired whether Perrin, the deputy registrar of the Wade Park Bureau, knew that the Ohio State Patrol had been investigating his bureau because there had been a significant amount of fake identification cards coming from that location.
After reviewing the testimony, we have concluded that this had been a proper line of questioning aimed at impeaching Perrin's testimony on direct examination that if there had been a fraud problem, the highway patrol would have informed him. Therefore, Underwood had not been deprived of a fair trial. Accordingly, this assignment of error is overruled.
In her third assignment of error, Underwood urges the court erred in its charge to the jury regarding accomplice testimony. However, at oral argument, Underwood's counsel conceded this issue. Accordingly, this assignment of error is moot.
Next, Underwood urges her convictions for tampering with records, unauthorized access to a computer and forgery had been against the manifest weight of the evidence.
The court in State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212.
In this case, the State assumed the burden to prove Underwood's guilt of tampering with records, unauthorized access to a computer system and forgery beyond a reasonable doubt. Tampering with records is defined by R.C. 2913.42(A) as follows:
 No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following: (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data or record; (2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section.
Pursuant to R.C. 2913.04(B), unauthorized use of a computer is defined as follows:
 No person shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network * * * without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, computer network * * * or information service or other person authorized to give consent by the owner.
Lastly, forgery is defined by R.C. 2913.31(A) as follows:
 No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.
In its case-in-chief, the State offered the testimony of Golar, who described for the jury that he had been in debt to his bookie, K.T. for approximately $47,000, and K.T. suggested that he participate in an identity scam by receiving a State identification card in the name of Randall Gunlock in order to steal money to pay off his debt. Golar further stated he had been given Gunlock's date of birth, social security number, and bank account information. He was instructed to go to the Wade Park License Bureau and locate a light-skinned black woman who was later identified as Mason. He testified that in November 1998, he carried out those instructions and received an identification card without ever displaying a birth certificate or a social security card. On a previous occasion, Golar identified Mason in a photograph array as the individual that K.T. had instructed Golar to locate in the Wade Park bureau.
The State next called Ohio State Highway Patrol Trooper Michael Giuliano who testified he investigated Golar in regards to stolen cars and a fraud case. He determined that Golar in fact obtained a forged identification card using Gunlock's information. He further testified that Mason told him she specifically remembered seeing a social security card and birth certificate that Golar produced for her. Underwood admitted to him that she signed Golar's application, indicating she had been the clerk that entered the information into the computer.
Investigator Michael Russo testified his job duties include enforcing laws which pertain to falsification and forgers within the Bureau of Motor Vehicles and has investigated over 1000 falsification cases. He stated during his investigation, he entered Gunlock's name and social security number and discovered Gunlock's driver's license had been cancelled on November 12, 1998, because a State identification card had been issued to him at the Wade Park Bureau. He further testified he received the application Golar completed and noted that Mason and Underwood had processed the application.
David Lasky, the Deputy Registrar of the Garfield Heights Bureau, next testified as to the proper procedure followed when a customer attempts to obtain a State identification card. He further testified that in a situation such as this, where someone attempts to obtain a State identification but is already in the system because they have a valid driver's license, the clerk processing the application would be alerted that a conflict in the system exists because in Ohio, one cannot have both a State identification and a driver's license. He stated that a conflict message would appear at the bottom of the screen, requiring the clerk to call Columbus and investigate the conflict.
At this time, the State rested. Underwood then offered the testimony of Gregory Perrin, the Deputy Registrar at the Wade Park Bureau, who testified that given this same situation, he believed the system would not indicate a conflict; rather, the computer would indicated the information entered was not in file. He further testified the State police would have notified him of any on-going problems with fraud coming out of that particular bureau.
In rebuttal, the State called the Deputy Registrar of the Lakewood License Bureau, Christine Shroka, who agreed with Lasky that a conflict message would alert the clerk a problem existed. It is the bypassing of that message that lays the foundation for Underwood's guilt.
The State also called Barry Solomon, a field representative with the Bureau of Motor Vehicles, who also testified that if a middle initial had not been put into the computer, as here, a conflict message would appear. Solomon stated the identification should have never been produced if proper procedure had been followed because Underwood would have had to contact Columbus in order to complete the transaction.
After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, this assignment of error is overruled.
In her final assignment of error, Underwood urges the State failed to present sufficient evidence to support her convictions. Crim.R. 29(A), provides in part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.* * *.
The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks (1991),61 Ohio St.3d 259, the court stated:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.)
Therefore, in accordance with the test set forth in Jenks, after reviewing this evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. Accordingly, this assignment of error is overruled and the judgment of the trial court affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________ PATRICIA ANN BLACKMON, J.
ANNE L. KILBANE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.