JOURNAL ENTRY and OPINION.
{¶ 1} Appellant challenges his convictions for having a weapon while under a disability and domestic violence, raising eight assignments of error. He contends that the court erred by (1) allowing witnesses to testify for the state who were not disclosed to appellant before trial; (2) allowing a police officer to testify about hearsay statements made by defense counsel; (3) failing to declare a mistrial or to allow defense counsel to withdraw so that he could testify; (4) admitting medical records into evidence without authentication; (5) answering jury questions without first discussing the matter with counsel; (6) failing to address inaccuracies in the presentence report which were raised by defense counsel; (7) sentencing appellant to prison rather than community control; and (8) sentencing appellant on a firearm specification attached to the charge of having a weapon while under disability.
 {¶ 2} We find the court erred by allowing the state to introduce unauthenticated medical records concerning the victim's hospital treatment, to the prejudice of appellant with respect to the domestic violence charge. Accordingly, we must reverse appellant's conviction on that charge and remand for a new trial. We further find the court erred by failing to consult counsel before responding to a jury request for guidance on the meaning of the word "possession." Therefore, we must also reverse appellant's conviction for having a weapon while under disability and remand for a new trial on that charge.
 FACTUAL AND PROCEDURAL HISTORY {¶ 3} Appellant was named in a four-count indictment filed October 16, 2001. He was charged with felonious assault and kidnaping, both of which carried firearms specifications and a notice of prior conviction. He was also charged with having a weapon while under disability, with firearms specifications, and domestic violence.
 {¶ 4} The jury trial commenced on April 8, 2002. Several witnesses the state had identified in pretrial discovery testified, including the victim, Shannon Clark, her daughter, La'Toya, her nephew Raulston Douse, Police Officer Cheryl Hill and Detective Earl Brown. The victim's sister, Veta Smith, Patrolman Michael Dunst, and Patrolman Edsel Osborn also testified over defense counsel's objection that the government had not identified them as witnesses in discovery.
 {¶ 5} The victim testified that appellant frequently stayed at her house with her and her daughter. One night, appellant went out to a bar while she stayed home and watched television with her nephew; her daughter was attending homecoming at her school. The victim went upstairs to her bedroom to talk on the telephone. She was in the bedroom on the telephone when appellant came in, locked the bedroom door, and began hitting her on the head, telling her that he was going to kill her. He picked up a shotgun and cocked it, and again told her he was going to kill her. The victim's daughter was outside the bedroom door. She yelled for him to stop. Appellant opened the bedroom door and the victim took her purse and car keys and left the house.
 {¶ 6} The victim went to a friend's house. She called her daughter, who told her that appellant was gone, so she went home again. At approximately 3:00 or 4:00 a.m., she went to the police station to report the incident. The police followed her back to the house and searched for the shotgun, but were unable to find it. At approximately 6:00 a.m., she called her sister, hysterical about what had happened.
 {¶ 7} The following day, the victim went to a hospital. X-rays were taken and she spoke with a social worker and obtained psychiatric treatment. She said she was bruised and had injured her left hand. Police later found the shotgun in the attic.
 {¶ 8} The jury found appellant guilty of domestic violence and having a weapon while under disability, but not guilty of kidnaping or felonious assault. The court sentenced appellant to one year of imprisonment on the firearms specification, to be served prior and consecutive to an eleven-month sentence on the underlying weapons charge. A six-month sentence on the domestic violence charge was to be served concurrently with the sentence on the weapons count. The court found that physical harm was caused, a gun was used, appellant had a prior criminal history, and appellant showed no remorse.
 LAW AND ANALYSIS {¶ 9} Appellant first asserts that the court abused its discretion by allowing testimony from three witnesses who had not been disclosed to defense counsel in discovery. Defense counsel objected to each witness's testimony on this basis, but the court overruled his objections.
 {¶ 10} Crim.R. 16(B)(1)(e) requires the prosecutor to furnish defense counsel with a written list of the names and addresses of all witnesses whom the prosecutor intends to call at trial, upon motion of the defendant. The prosecutor is under a continuing duty to supplement discovery, both before and during trial. Crim.R. 16(D). If the prosecutor fails to comply, the court may, among other things, prohibit introduction of the evidence not disclosed in discovery, grant a continuance, or make such other order as it deems just. Crim.R. 16(E)(3).
 {¶ 11} "[W]here a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefitted the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced." State v. Scudder (1994),71 Ohio St.3d 263, 269. The record does not suggest that the state willfully withheld the identity of these three witnesses. Appellant does not argue that the state willfully failed to identify them. Rather, he claims that he was prejudiced because he did not have an opportunity to prepare for cross-examination.
 {¶ 12} The first undisclosed witness, Veta Smith, confirmed that she had a telephone conversation with the victim the morning after this incident, in which the victim told her that appellant struck her and pointed a shotgun at her. The victim had already testified about this conversation before Smith testified, so appellant could not have been surprised by anything Smith said. Counsel did not cross-examine Smith. However, Smith's direct testimony was extremely limited and cumulative, so cross-examination was not necessarily warranted. Therefore, we perceive no prejudice from the admission of Smith's testimony.
 {¶ 13} Patrolman Michael Dunst testified about the police search of the victim's house after the victim made her report to the police. Again, the victim had already testified about this search. Appellant's counsel fully cross-examined Dunst; he does not claim there was any surprise testimony to which he was unable to respond.
 {¶ 14} Finally, Patrolman Edsel Osborn testified that he recovered the shotgun from the attic, rendered it safe, and took it to the detective bureau. Again, the victim had testified that the police recovered the gun from the attic. Appellant's counsel fully cross-examined Osborn.
 {¶ 15} The testimony of all three witnesses was cumulative. None of their testimony was directly relevant to the events underlying the charges. Consequently, appellant was not prejudiced. The court did not abuse its discretion by allowing this testimony.
 {¶ 16} The second assigned error claims the court erred by allowing a police officer to testify about a pretrial conversation he had with defense counsel, arguing that this conversation was hearsay. The third assignment of error alleges the court erred by refusing to declare a mistrial or to allow defense counsel to withdraw so he could testify about what he said to the police officer.
 {¶ 17} Detective Earl Brown testified that he had learned the location of the shotgun as a result of a conversation with defense counsel at appellant's preliminary hearing:
"A. I learned that the weapon just mentioned, the shotgun, that was mentioned, would possibly be in the attic of the house at 9315 Union.
"Q. Who told that you [sic]?
"A. I learned that —
"MR. BOSSIN [defense counsel]: Objection, your Honor.
"THE COURT: Overruled.
"A. I learned that after, I think it was — well, it was after September 25th. It was after the Preliminary Hearing, when after [sic] the defendant was arrested. It was after the Preliminary Hearing in Courtroom 3-C when the defense attorney mentioned it to me.
"MR. BOSSIN: Objection, your Honor.
"THE COURT: Overruled."
 {¶ 18} On cross examination, the witness said, "I remember the words you said. You said, I should check the attic." He denied that defense counsel had said that "the gun had to still be in the house."
 {¶ 19} The out-of-court statement of defense counsel was not offered as proof that the gun was there, but as an explanation why police searched the attic. It was not a statement of fact, but a suggestion for future action by the police. Therefore, it was not inadmissible as hearsay. State v. Smith (2000), 87 Ohio St.3d 424, 434; State v. Mason
(2001), 143 Ohio App.3d 114, 119-20. The limited relevance of this testimony leads us to question why the state elicited it at all; under the circumstances, a limiting instruction would have been appropriate. Cf. Mason, 143 Ohio App.3d at 120. However, appellant did not request a limiting instruction; it was not plain error for the court not to provide an instruction sua sponte.
 {¶ 20} Appellant urges that a mistrial should have been declared because his attorney needed to testify. "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Crim.R. 33; State v. Sage (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343,349-350. `A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *.' State v.Reynolds (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible.State v. Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9." Statev. Treesh (2001), 90 Ohio St.3d 460, 480.
 {¶ 21} Given the tangential nature of the testimony, the court did not abuse its discretion by denying appellant's counsel's demand for a mistrial. The precise words used by appellant's counsel in his conversation with the detective were not relevant; they would not tend to make a fact of consequence to the determination of this action more or less probable. Evid.R. 401. They simply explained why the police searched where they did.[1] Therefore, the second and third assignments of error are overruled.
 {¶ 22} Fourth, appellant argues the court erred by admitting unauthenticated medical records into evidence. The state offered into evidence the emergency room records and other medical records concerning the victim's treatment as a result of this incident. The records custodian did not testify at trial, so these records were not admissible under R.C. 2317.40. Nor were they admissible under R.C. 2317.422, which allows hospital records to be authenticated with a written certification identifying the records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of business. The records introduced into evidence did not contain a written certification. Therefore, they were not admissible under R.C. 2317.422.
 {¶ 23} The medical records corroborated the victim's testimony about her injuries. Given the conflicting testimony about the victim's injuries, we cannot say appellant was not prejudiced by the erroneous introduction of the medical records, at least with respect to his conviction of domestic violence. However, the victim's injuries were not relevant to the charge of having a weapon while under disability, so appellant's conviction on that charge is not affected by this assignment of error. Accordingly, we sustain the fourth assignment of error, and will reverse appellant's conviction for domestic violence and remand for a new trial on this basis.
 {¶ 24} Fifth, appellant challenges the court's procedure for responding to jury questions during deliberations. The jury returned with questions three times during their deliberations. Both the prosecution and the defense were present while the jury's questions were read and the court responded. Cf. State v. Taylor (1997), 78 Ohio St.3d 15, 26.
 {¶ 25} First, the jurors asked for the definition of reasonable doubt, which the court provided to them. Second, the jury asked the court to clarify the definition of possession. Specifically, the jury asked: "In the definition of possession, it is a voluntary act if the possessor knowingly procured or received the fireman [sic] or was aware of his control thereof for sufficient period of time to have waived [sic] his possession. Please put in layman's terms both procured and aware of his control or a similar definition of possession."
 {¶ 26} In response to this question, the court provided several alternative definitions to the jury. Third, the jury requested a written copy of the definition of possession. The court gave the jury a copy of the legal definition of possession that it had previously given to them. The court did not discuss its response with counsel or give counsel an opportunity to object before it responded to the jury.
 {¶ 27} "[T]he trial court erred when it did not provide appellant with an opportunity to be heard or to object before it responded to the jury's [question]." Bostic v. Connor (1988), 37 Ohio St.3d 144, 149. Communications between the jury and the court must be made in the presence of the parties so that the parties have an opportunity to be heard and to object before the judge responds to the jury's inquiry. Id. Although they were present, the parties were not given an opportunity to be heard before the court responded to the jury's questions. "It is error for a judge to reply to communications from the jury without consulting counsel." Vogel v. American Warranty Home Service Corp. (5th Cir. 1983),695 F.2d 877, 881.
 {¶ 28} The court's responses to the jury's first and third questions simply repeated instructions it previously gave. These instructions were harmless and could not have prejudiced appellant. However, the court's response to the second question went further, supplying the jury with several additional definitions of possession. Possession was an element of having a weapon while under disability, one of the offenses of which appellant was convicted. Therefore, we cannot say appellant was not harmed by the denial of an opportunity to address the court's proposed response to that question before it was given to the jury and we are compelled to reverse the conviction on that charge and remand for a new trial. State v. Alvarado (Sept. 13, 2001), Cuyahoga App. No. 78629; State v. Ambler (Aug. 31, 2000), Cuyahoga App. No. 77103.
 {¶ 29} The sixth, seventh and eighth assignments of error challenge the court's sentencing decisions. Each of the issues raised by appellant relates to the sentence imposed for the felony charge of having a weapon while under disability. Inasmuch as we have reversed appellant's conviction for this offense, these assignments are moot.[2]
Reversed and remanded for a new trial.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J. concurs.
TIMOTHY E. McMONAGLE, J. concurs in judgment only.
[1] Counsel was concerned that the jury would infer that the defendant told him where the gun would be. Counsel was able to undermine this potential inference through cross-examination, suggesting that the witnesses had not seen appellant leave with the gun so logic suggested that it was still in the house. Counsel's testimony would not have added anything.
[2] If, on remand, appellant is convicted of having a weapon while under disability, the common pleas court should consider whether R.C.2929.14(D)(1)(e) allows a sentencing enhancement for the firearms specification to be imposed, given the passage of time since appellant's release from post-release control for his prior offense.