DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lucas County Court of Common Pleas judgment of conviction and sentence. A jury found appellant Kirk Hawthorne guilty of a single count of aggravated arson in violation of R.C. 2909.02(A)(2). Upon a thorough review of the record, we affirm appellant's conviction and sentence.
 {¶ 2} On or about October 25, 2002, the Lucas County Grand Jury issued an indictment against appellant Kirk Hawthorne charging him with one count of aggravated rson in violation of R.C. 2929.02(A)(2), a felony of the second degree.
 {¶ 3} At his arraignment on October 30, 2002, appellant was found to be indigent and defense counsel was appointed to represent him. Appellant entered a plea of not uilty to the sole count in the indictment.
 {¶ 4} Appellant's jury trial commenced on April 1, 2003 and ended the following day, on April 2, 2003.
 {¶ 5} The evidence adduced at trial demonstrated the following. Witness Yolanda Hill had previously had a relationship with appellant Hawthorne, and that elationship had ended badly. On the night of October 11, 2002, which was after the reakup, Hill encountered appellant at a gas station a few blocks from her home. She had gone to the gas station with Donald Hood, who was a friend of the family. According to Hill, an altercation ensued between herself and appellant, during which appellant threatened to kill her.
 {¶ 6} When she returned home that night, Yolanda told her father, Ross Hill, about the encounter. While Yolanda and Donald remained inside the house, Ross went out to the front porch to watch for appellant.
 {¶ 7} Minutes after taking his place on the porch, Ross noticed appellant running from the back of the house toward the front. According to Ross, as soon as appellant realized that he had been spotted, he turned around and ran back towards the rear of the house.
 {¶ 8} At the same time, Yolanda alerted her father that there was smoke coming in the back door. When Ross went to investigate, he found a plastic gasoline container burning on the back porch and saw fire burning the back wall and rear door of the house. Yolanda called 911, and her father and Donald went to put the fire out. While the two men were extinguishing the fire, a rock was thrown in the back door. Yolanda called 911 a second time, asking them to hurry up.
 {¶ 9} While the commotion was in progress, Yolanda observed appellant pacing back and forth across the street, looking at her.
 {¶ 10} When firefighters and police arrived at the house, they made sure the fire was out and took pictures of the damage. Upon investigation, firefighter Dale Pelz concluded that someone had intentionally set the fire.
 {¶ 11} Approximately 25 minutes after the firefighters and police left, someone threw a brick through the windshield of Donald's truck. When Donald and Ross went to investigate, they saw appellant running down the street, away from the scene.
 {¶ 12} Later that night, Yolanda and Donald went to leave the house, when, once again, they encountered appellant. He approached the truck and threatened Yolanda that he would hurt her. Following a brief conversation with Donald, appellant left the area.
 {¶ 13} Several weeks after the incidents involving the fire and the rocks, Yolanda received a letter from appellant, which stated the following:
 {¶ 14} "I was disappointed in what I had seen in you. I remembered your assuring me that you would stay away from places like that and you claimed you loved me and we were together.
 {¶ 15} "I saw you talking with Ronald Mays and riding with Donald. Ross was supposed to be at the horse races and you were putting me on hold calling me at will. (Keeping tabs on me).
 {¶ 16} "I was hurt, and I really can't understand why you challenged me too [sic] fight Donald knowing how much you all keep police in your mix! You know I love you, but my love couldn't make you really love me."
 {¶ 17} "I love you Yolanda and if acting and being a fool for you is what I have to do to get your attention, I will do it again and again."
 {¶ 18} The jury returned a verdict of guilty as to the sole count in the indictment.
 {¶ 19} On April 21, 2003, the court sentenced Hawthorne to a period of five years incarceration. In addition, the court ordered Hawthorne to pay all costs of prosecution, court appointed counsel costs, and any fees permitted under R.C. 2929.18(A)(4).
 {¶ 20} Appellant brings this appeal, setting forth the following assignments of error.
 {¶ 21} First Assignment of Error: "The Trial Court's Evidentiary Rulings and Jury Instructions Denied the Defendant-Appellant a Fair Trial, and Denied him Due Process of Law."
 {¶ 22} Second Assignment of Error: "Defendant-Appellant's Conviction is Not Supported by Sufficient Evidence, and is Against the Weight of the Evidence an [sic] Therefore a Denial of the Defendant-Appellant's Constitutional Right of Due Process of Law."
 {¶ 23} Third Assignment of Error: "The Trial Court Erred When it Ordered the Defendant-Appellant to Pay Unspecified Court Costs, Fees, and Attorney Fees."
 {¶ 24} We begin with examination of appellant's claim, as stated in his first assignment of error, that the trial court's evidentiary rulings and jury instructions denied him a fair trial and denied him due process of law. Specifically, appellant claims that the court's so-called prejudicial rulings and instructions prevented appellant's trial counsel from presenting evidence of the acrimonious relationship that existed between the witnesses and the appellant.
 {¶ 25} In general, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173. Therefore, this court will not disturb a trial court's evidentiary ruling unless we find it to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151. In addition, errors in evidentiary rulings are "trial errors," subject to review under the harmless error standard. State v.Echavarria, 12th Dist. No. CA2003-11-300, 2004-Ohio-7044, ¶ 20, citingState v. Esparza (1996), 74 Ohio St.3d 660, 661.
 {¶ 26} Appellant cites four instances in which he claims the trial court abused its discretion. The first instance involved the following exchange, which occurred during direct examination of witness Ross Hill:
 {¶ 27} Q. "And did you subsequently see [appellant] at any other time that night?"
A. "That night later on after that incident, no, I didn't see him any more [sic]. But we had a feeling that he was around lurking."
 {¶ 28} Defense counsel, Thomas Tomczak: "Objection, Your Honor. Ask that it be stricken."
 {¶ 29} The court: "Okay. I'll strike that. We don't want to hear about feelings, with the deepest respect. We just want to hear what you saw and heard."
 {¶ 30} Appellant argues that the trial court's "extremely deferential and apologetic tone conveyed to the jury that the judge did not want to sustain the objection, but the rules required that he do as the big, bad defense attorney requested."
 {¶ 31} Review of the exchange does not demonstrate that the court was granting great deference to the state. All the court did was to instruct the witness not to talk about his feelings and to limit his testimony to those things that he saw and heard. The remark "with deepest respect" was clearly meant to advise the witness that the court meant no disrespect to him in making its instruction. Appellant's comment that the judge did not wish to sustain the objection but was required to do so because of the "big, bad defense attorney" is completely without substance or foundation.
 {¶ 32} Another alleged abuse of discretion occurred during direct examination of Ross Hill, this time involving the following exchange:
 {¶ 33} Q. "When [Yolanda Hill and Donald Hood] returned [from the gas station] — what happened when they returned?"
A. "Well, when they came home, they was telling me about they had some type of altercation with Mr. —"
 {¶ 34} Tomczak: "Objection."
A. "Sorry."
 {¶ 35} The court: "Sustained. Well, no. I'm not going to sustain it. I'm going to caution the jury this isn't offered for the truth of the matter asserted. It's just to set the stage. So we've already heard testimony about the — about what was told to this defendant — or to this witness, but it will help the flow of things, but you understand the difference between the truth of the matter asserted and simply setting stage. So if you want to proceed under those instructions, go ahead."
 {¶ 36} Appellant argues that the phrase "truth of the matter asserted" is a legal term of art and, therefore, the jury could not reasonably be expected to understand what the judge was telling them. In referring to the "truth of the matter asserted," the judge was clearly referring to the hearsay rule. "Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Where an out-of-court statement is offered without reference to its truth, however, it is not hearsay." State v. Price (1992), 80 Ohio App.3d 108, 110, citingState v. Lewis (1970), 22 Ohio St.2d 125, 132-133.
 {¶ 37} Reviewing the disputed exchange within the context of the testimony as a whole, it becomes clear that the court was merely allowing the State to explain the father's conduct in going to the front porch to look out for appellant. The testimony was not offered with reference to its truth. Therefore, as the trial court concluded, it was not hearsay. Because it was not hearsay, its admission did not violate the hearsay rule. As for the instruction itself, although it was not artfully made, it was not, in our opinion, so confusing as to amount to an abuse of discretion on the part of the trial court.
 {¶ 38} The third alleged abuse of discretion occurred during cross-examination of Ross Hill by attorney Tomczak:
 {¶ 39} Q. "You were out there looking for [appellant]?"
A. "When I was sitting on the porch?" {¶ 40} Q. "You went out there looking for him?"
A. "Yes."
 {¶ 41} Jeffrey Lingo, for the State: "I'm going to object again, ask the witness please be allowed to give his answer."
 {¶ 42} Tomczak: "Yes or no."
 {¶ 43} The court: "Go a little slower. That would help you all, maybe help the court reporter."
 {¶ 44} Tomczak: "Sure. Thanks, Judge. Sorry."
 {¶ 45} Q. "You were looking for him?"
A. "I was looking for him. I figured he would come."
 {¶ 46} Q. "You went out to sit on your porch. You understand my question?"
A. "You look —"
 {¶ 47} Tomczak: "We both got to slow down."
 {¶ 48} Appellant argues that the court erred when, instead of issuing an instruction regarding answering "yes or no questions," it instructed counsel to speak more slowly.
 {¶ 49} Examination of the testimony reveals that the problem with the question and answer session between defense counsel and the witness was simply that both individuals were speaking too quickly. Defense counsel acknowledged the problem by apologizing to the court and admitting that "we both got to slow down." The trial court did not abuse its discretion in instructing the speakers to speak more slowly.
 {¶ 50} Finally, appellant argues that the court erred to appellant's prejudice when it instructed the jury to "ignore" a remark made by defense counsel during his cross-examination of Donald Hood:
 {¶ 51} Q. "Okay. And you never saw Kirk there at that house during the time of the fire, did you?"
A. "No. Ross did."
 {¶ 52} Q. "You never saw him there?"
A. "No. I didn't."
 {¶ 53} Q. "And Ross says he saw him?"
 {¶ 54} Lingo: "Objection. Speculation."
 {¶ 55} The court: "I'll sustain that."
 {¶ 56} Tomczak: "Certainly is."
 {¶ 57} Lingo: "Ask that statement be stricken also, Your Honor."
 {¶ 58} The court: "It will be. Jury is instructed to ignore the last two comments made by Mr. Tomczak."
 {¶ 59} Appellant's objection to the court's instruction that the jury "ignore" defense counsel's comments does not arise from a claim that the comments were in fact admissible, but rather arises from a claim that use of the term "ignore" was prejudicial. According to appellant, use of the term "ignore" "provided the jury with a clear indication that defense counsel was the epitome of the criminal attorney stereotype; [i]n other words, he was trying to prevent the jury from learning `the truth.'" According to appellant, this problem would not exist at all, if only the court had instructed the jury to "disregard", rather than "ignore", defense counsel's words. This court disagrees with appellant's characterization of the instruction. The trial court was clearly not instructing the jury to ignore defense counsel, but rather was striking inappropriate cross-examination and comment. There is simply no evidence to suggest that the jury was negatively influenced by the court's choice of words.
 {¶ 60} None of the evidentiary rulings appellant complains of support his claim of abuse of discretion. Further, there is no evidence that appellant was unfairly prejudiced by any of those rulings. To the extent that appellant claims that the court's so-called prejudicial rulings and instructions prevented appellant's trial counsel from presenting evidence of the acrimonious relationship between the witnesses and the appellant, it is our opinion that evidence of such abounded in this case. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 61} Appellant's next claim, as stated in his second assignment of error, that his conviction was not supported by sufficient evidence and is against the weight of the evidence. Specifically, appellant complains that the evidence fails to establish beyond a reasonable doubt that appellant was the individual who intentionally set the fire.
 {¶ 62} A criminal conviction may be overturned on appeal either because it is against the manifest weight of the evidence or because there is an insufficiency of evidence. When determining whether a conviction is against the manifest weight of the evidence, the appeals court acts as a "thirteenth juror" to determine whether the factfinder lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In making this determination, we must review the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. Id. Because the fact-finder sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), 2nd Dist. No. 16288.
 {¶ 63} When making a determination as to sufficiency of the evidence, the court must consider whether the evidence submitted is legally sufficient to support each of the elements of the charged offense. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would satisfy the average person of the defendant's guilt beyond a reasonable doubt. See id. at 390; State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 64} R.C. 2909.02(A)(2) relevantly provides that: "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 65} "(2) Cause physical harm to any occupied structure;"
 {¶ 66} In the instant case, the state provided testimony by Yolanda Hill and Donald Hood, two witnesses who were at the scene of the altercation involving appellant and Yolanda. Yolanda testified that she had had some difficulties in her relationship with appellant, and that the relationship had ended badly. She further testified that on the night in question appellant approached her and started a fight. According to testimony by both witnesses, the altercation preceded the fire at Yolanda Hill's home by only 15-20 minutes. Ms. Hill further testified that during the altercation appellant said to her, "I'm going to kill you, bitch."
 {¶ 67} Ross Hill testified that after learning of the altercation, he went out to the front porch to keep an eye out for appellant. The porch was enclosed with glass, and he could clearly see through it. Within minutes, he was alerted that there was smoke coming from the back door. At the same time, he saw appellant running from the rear of the house toward the front. Appellant looked him in the eye and then ran back towards the rear of the house.
 {¶ 68} When Ross opened the back door, he discovered a plastic gasoline container burning on the porch and saw fire burning up the back wall and rear door of the house. Soon after, someone threw a rock through the back door. After the police and firefighters left, someone threw a brick through the windshield of Donald Hood's car. Appellant was seen fleeing the scene.
 {¶ 69} In a letter written to Yolanda Hill shortly after the fire, wherein appellant indicated that he was disappointed because she did not love him, he stated that if "acting and being a fool for you is what I have to do to get your attention, I will do it again and again."
 {¶ 70} Arson investigator Dale Pelz testified that upon investigation he determined that this was an aggravated arson because there were no other sources for ignition and there were pour patterns consistent with the fire being set by human hand.
 {¶ 71} In the opinion of this court, the evidence abundantly supports each of the elements of the offense charged and would certainly convince the average person of appellant's guilt beyond a reasonable doubt. Further, after reviewing the entire record and weighing all the evidence and reasonable inferences, and considering witness credibility, it is clear that the fact-finder did not lose its way and there was not such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. For the foregoing reasons, appellant's second assignment of error is found not well-taken.
 {¶ 72} We now turn to appellant's third assignment of error, wherein he claims that the trial court erred when it ordered him to pay unspecified court costs. At appellant's sentencing, on April 21, 2003, the trial court ordered appellant to pay all prosecution costs, court appointed counsel costs and any fees permitted under 2929.18(A)(4). Appellant challenges the court's order requiring him to pay costs on the grounds that he is unable to produce the income necessary to pay any costs or fees.
 {¶ 73} R.C. 2947.23 requires a court to assess costs of prosecution against all convicted defendants. State v. White (2004),103 Ohio St.3d 580, 2004-Ohio-5989, at ¶ 8. This court has previously determined that "[t]he trial court is not required to hold a hearing or otherwise determine an offender's ability to pay before ordering him to pay such costs." State v. Hartsell, 6th Dist. Nos. L-03-1039 and L-03-1040, 2004-Ohio-1331, ¶ 7, citing State v. Fisher, 12th Dist. No. CA98-09-190, 2002-Ohio-2069, ¶ 32; and State v. Scott, 6th Dist. No. L-01-1337, 2003-Ohio-1868, ¶ 7.
 {¶ 74} In this case, the trial court did, in fact, find that "defendant is healthy and can work when he chooses to do so, and so is able to meet [his financial obligations]." Although the law does not require a trial court to make such a determination when ordering a defendant to pay the costs of prosecution, the trial court did not err in taking this extra step. Accordingly, this aspect of appellant's third assignment of error is found not well-taken.
 {¶ 75} A slightly different analysis attends our review of the court's assessment of attorney fees. R.C. 2941.51(D) provides that "if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." To impose this financial sanction, the court must affirmatively determine "that a defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of legal services rendered to him." State v. Nicholson, 6th Dist. No. L-03-1256, 2004-Ohio-6314, at ¶ 8. In this case, the court made the requisite affirmative determination when it found that defendant, due to his good health and ability to work, was able to meet his financial obligations.
 {¶ 76} Finally, we will address the costs appellant was ordered to pay pursuant to R.C. 2929.18(A)(4). R.C. 2929.19(B)(6) provides that "before imposing a financial sanction under section 2929.18 of the Revised Code * * *, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." See also, State v.Dandridge, 12th Dist. No. CA2003-12-330, 2005 Ohio 1077, at ¶ 5-6 (stating that there are no express factors that must be considered or specific findings regarding the offender's ability to pay that must be made; all that is required under R.C. 2929.19(B) (6) is that the trial court consider the offender's present or future ability to pay.) As indicated above, the court in this case, citing appellant's good health and ability to work, affirmatively determined that appellant had the ability to pay. The sanction was therefore properly imposed. {¶ 77} For all of the foregoing reasons, appellant's sixth assignment of error is found not well-taken.
 {¶ 78} Upon due consideration, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Skow, J., Parish, J. Concur.