OPINION
{¶ 1} Defendant-appellant appeals from his conviction on one count of trafficking in cocaine, in violation of R.C.2925.03(A)(1)(C)(4)(a). The plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was indicted on one count of trafficking in cocaine (crack), in violation of R.C. 2925.03(A)(1)(C)(4)(a). The charges arose from an allegation that on April 28, 2004, a confidential informant [hereinafter CI] purchased two rocks of crack cocaine from appellant.
 {¶ 3} The matter proceeded to a trial by jury. However, the trial resulted in a hung jury. Another jury trial followed. The following evidence was adduced at that second trial. The confidential informant (CI) is a 51 year old recovering crack addict. The CI has a criminal record which includes convictions for cocaine trafficking and petty theft. The CI has worked with the Alliance Police Special Investigation Unit as a confidential informant for seven and a half years.
 {¶ 4} On April 28, 2004, the Alliance Police were investigating complaints of drug trafficking at 314 Oak Street. They believed the residence was inhabited by appellant and Mario Zachary. The CI told detectives that he could make a buy from that residence.
 {¶ 5} In preparation for a buy, the detectives met with the CI and patted him down, searching for contraband. The CI was fitted with a wire, allowing the detectives to monitor and record the transaction, and was given $40.00, which had been photocopied. The detectives and CI had not targeted any certain suspect to buy the crack cocaine from. Instead, the CI was instructed to make the deal with anyone who was available. Tr. at 156, 166. In addition, the CI signed a statement of understanding which set forth the protocol for the controlled drug buy. Detective Blair, of the Alliance Police Department, testified that the CI was well versed in what needed to be done because he had successfully made controlled drug buys many times before.
 {¶ 6} The detectives took the CI to a location several blocks from 314 Oak Street and dropped him off. The CI began to walk to the residence. The detectives continued to watch the CI. They continued their surveillance as the CI approached the residence.
 {¶ 7} The CI first saw appellant, known to the CI as "Shorty", while Shorty was on a bicycle near the house. The CI and appellant entered the residence together. As they did, the CI noticed a dog tied up on the porch. The CI stated "Get that dog because I'm afraid of him" or words to that effect. Tr. 135. Appellant's voice is heard as appellant restrains the dog. Tr. 124. That is the only time appellant's voice is heard. Id.
 {¶ 8} Mario Zachary sat inside the entrance of the house, playing a computer game. The CI asked "Whose got the biggest?" and Zachary replied "Holler at D." Tr. at 136-137. The CI testified that his question referred to the size of rocks of crack cocaine and that "D" referred to Shorty, the appellant. The CI then handed appellant $40.00 in cash and appellant gave him two rocks of crack cocaine in turn. Tr. 136-139.
 {¶ 9} The audio recording of the transaction also revealed that the CI stated "You know I need a start" and a woman responded. The CI testified that this statement referred to cocaine transactions in which he would purchase crack cocaine for someone else's use and he would ask for a "start", or a small amount for himself. Tr. at 138.
 {¶ 10} The entire transaction took approximately three minutes, from the time the CI entered the house to when he left the house. After he left the house, he stated "mission accomplished," a message to the detectives who were monitoring the transaction.
 {¶ 11} The CI then walked back to where he had been dropped off so that the detectives could pick him up. During this walk, the CI encountered an individual who was identified as the CI's nephew, at the corner of Oak Street and Nobel. The nephew asked the CI for a cigarette. The CI stated that he didn't have any. The nephew also asked the CI why he had his hand in the pockets of his jacket. The CI replied that someone was looking for him and kept moving. According to the CI, the CI did not approach his nephew, the nephew remained on the porch throughout the conversation and the CI's hands remained in his pockets where the crack cocaine from the buy was in a bag, cuffed loosely in one hand. Tr. at 141-142, 153-156.
 {¶ 12} Eventually, the CI reached the point where he had been dropped off. The detectives returned to pick him up and the CI turned over the crack cocaine to the detectives. The CI was paid $50.00 for taking part in the transaction. Appellant was not arrested that day because the detectives did not want to compromise the CI's identify as a confidential informant.
 {¶ 13} At the conclusion of their deliberations, the jury found appellant guilty. Appellant was sentenced to a 12 month term of imprisonment and ordered to pay a fine. In addition, appellant's driver's license was suspended for six months.
 {¶ 14} It is this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT ERRED IN REFUSING TO REDACT THE HEARSAY PORTION OF THE AUDIO TAP [SIC].
 {¶ 16} "II. THE APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.
 I {¶ 17} In the first assignment of error, appellant contends that the trial court erred in refusing to redact a portion of the audio tape of the transaction which appellant argues constitutes hearsay. We disagree.
 {¶ 18} Appellant's assignment of error concerns a portion of the audio tape in which the CI asked a question about who had the "biggest". According to the CI's testimony, this question asked who had the biggest rocks of crack cocaine. Tr. at 136. Specifically, appellant challenges Zachary's response to the question. Zachary responded by stating "Holler at D." Id. at 137. Appellant contends that Zachary's response constituted hearsay and should have been redacted. Appellee responds that Zachary's response was not hearsay because it was not admitted to prove the truth of the matter asserted or, in the alternative, if it is found to be hearsay, it falls within the res gestae exception to hearsay.[1]
 {¶ 19} Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court.State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find that the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 20} First, we note that appellant's counsel did not object at trial to the challenged portion of the audio tape. Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error". "Plain error" is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See State v.Underwood (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332. We find no plain error in this case.
 {¶ 21} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." When an out-of-court statement is offered without reference to its truth, it is not hearsay. State v.Lewis (1970), 22 Ohio St.2d 125, 1321-33, 258 N.E.2d 445.
 {¶ 22} We conclude that the trial court did not err in admitting Zachary's statement. The statements at issue were not offered by the State to prove the truth of the matters asserted, i.e. who had the "biggest ones." It only shows that Zachary thought that "D" had the biggest pieces of crack cocaine.
 {¶ 23} Further, assuming the statement was hearsay, it qualifies under the present sense impression exception to the hearsay rule. Evidence Rule 801(1) states as follows: "The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness: 1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." In this case, the statement was made by the declarant as he was perceiving the event and was being recorded over the CI's wire. This evidence simply described what actually happened during the drug transaction.
 {¶ 24} Accordingly, we find no reversible error by the trial court. Appellant's first assignment of error is overruled.
 II {¶ 25} In the second assignment of error, appellant contends that the conviction was against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 26} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, Supra, at 175.
 {¶ 27} Appellant argues that there was a lack of proof that appellant was the person who sold the drugs to the CI and that the CI had ample opportunity to obtain the drugs during his encounter with his nephew. Appellant asserts that the CI could have prearranged with his nephew to have the nephew take the money and give appellant the crack.
 {¶ 28} Evidence presented in this case showed that the CI had been working for the Alliance Police Department for seven and a half years and had successfully made controlled buys many times in the past. The CI testified that he purchased the crack cocaine from appellant. Although the audio tape did not capture the sale, apparently because the transaction was largely non-verbal, the audio tape and the detectives confirmed appellant was present in the residence at the time of the sale.
 {¶ 29} Further, according to the CI, when he encountered his nephew on his way back to the drop off/pick up point, the nephew was standing on the porch where the CI resided. The CI testified that the nephew "hollered at me and asked for a cigarette and asked me what I had in my coat pocket." Tr. at 140. The CI tried to "play it off" so that he could continue on his way. According to the CI's testimony, the nephew never left the porch and the CI never left the sidewalk. Tr. at 141. The CI denied obtaining any crack cocaine from the nephew. Tr. at 141.
 {¶ 30} The jury obviously found the CI's testimony to be credible. Thus, upon review, we find that there was sufficient evidence, which if believed, supported the conviction. Further, we find that the jury did not clearly lose its way nor create a manifest miscarriage of justice.
 {¶ 31} Accordingly, appellant's second assignment of error is overruled.
 {¶ 32} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Wise, P.J. concur and Hoffman, J. concurs separately.
[1] In the first trial, the portion of the audio tape which contained Zachary's statement had been redacted. In the second trial, the trial court disagreed with the first court's ruling and found that the redacted portion of the audio tape was not offered for the truth of the matter asserted and that it formed part of the res gestae of the offense. Thus, in the second trial, the court did not redact that portion of the audio tape and the jury heard Zachary's response.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.