OPINION *Page 2 
{¶ 1} Defendant-appellant Aryon Maxwell appeals his conviction on one count of aggravated burglary with an accompanying firearm specification and one count of theft of a firearm following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND LAW {¶ 2} On or about June 23, 2005, appellant met up with three friends, Ronald Sims, Jeremy Clapper, and Ryan Adams. The four men drove around in Sims' car and smoked marijuana. Clapper told the group he knew where they could steal twenty (20) pounds of marijuana. Clapper's brother dated Staci Hammers, and Clapper told the group that there was a large quantity of marijuana at the home of Staci's parents, Renee and Thomas Hammers.
 {¶ 3} Clapper directed Sims to Renee and Thomas Hammers' home, located in an isolated area of Blue Rock, Ohio. Appellant, who had a black duffel bag with him when picked up by Sims, pulled a sawed off shotgun out of the bag and showed it to the others. Once Sims and Clapper saw the shotgun, they exited the car and walked away. Appellant and Adams approached the Hammers' home. Appellant knocked, and the door was answered by Mrs. Hammers, who was home alone.
 {¶ 4} Appellant told Mrs. Hammers that he and Adams had driven from Columbus to visit a friend who had moved into the area, and that they were lost. Appellant asked Mrs. Hammers for assistance in obtaining the telephone number and address of the friend. Mrs. Hammers stepped onto the front stoop with a telephone book and cordless telephone, and proceeded to help appellant try to locate the *Page 3 
information. Appellant engaged Mrs. Hammers in conversation on the front stoop for approximately twenty (20) minutes.
 {¶ 5} While Mrs. Hammers was conversing with appellant, Adams went back to the car, ostensibly to retrieve a slip of paper containing information about the friend he and appellant were supposedly trying to locate. Instead, Adams retrieved the sawed off shotgun. Adams then walked up behind Mrs. Hammers, pointed the shotgun at her, and said "You just need to go to the ground and be quiet and everything will be okay." (Tr. at 146.) Mrs. Hammers lay on the ground while appellant went into the home. Appellant screamed "Where's the stuff" as he searched the home, and Mrs. Hammers told appellant that she and her husband had been robbed previously and some items had not been replaced. (Tr. at 147.) Appellant exited the home with a duffel bag full of items taken from the home. Appellant and Ryan told Mrs. Hammers to go inside the home and sit down. As appellant and Ryan were leaving, Mrs. Hammers looked out the window in an effort to get the license plate number of the vehicle they were driving. Appellant came back inside the home with a .357 magnum gun he had taken from the Hammers, pointed it at Mrs. Hammers, and said "If you don't sit back down in that chair, I'm going to fucking shoot you." (Tr. at 153.) Mrs. Hammers knew that the .357 magnum was loaded and, fearing for her life, sat back down. Appellant and Ryan left the scene.
 {¶ 6} The police were called to the scene and began an investigation. Evidence was collected, including the telephone book used by appellant and a box of ammunition containing empty cartridges. Latent fingerprints, later identified as appellant's, were obtained from the phone book and ammunition box. *Page 4 
 {¶ 7} Staci Hammers learned from Clapper's sisters that appellant and Adams were involved in the crime against her mother. Staci obtained a picture of Adams from a mutual friend. She showed that picture to her mother, who positively identified Ryan as one of the two men involved in the burglary. Staci thereafter went to the police with the information. The police subsequently met with Mrs. Hammers and showed her a photo array that contained a picture of appellant obtained from BMV records. Mrs. Hammers positively identified appellant as the other man involved in the burglary.
 {¶ 8} Appellant was indicted on August 11, 2005, and was arraigned on September 21, 2005, on the following seven (7) counts: (1) aggravated burglary with a firearm specification in violation of R.C. 2911.11(a)(2) and 2941.145, a felony of the first degree; (2) theft of a firearm in violation of R.C. 2913.02(A)(1), a felony of the third degree; (3) theft of credit cards in violation of R.C. 2913.02(A)(1), a felony of the fifth degree; (4) theft of dangerous drugs in violation of R.C.2913.02(A)(1), a felony of the fourth degree; (5) burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree; (6) theft of a firearm in violation of R.C. 2913.02(A)(1), a felony of the fourth degree; and, (7) theft of dangerous drugs in violation of R.C.2913.02(A)(1), a felony of the fourth degree.[1] Appellant pleaded not guilty, and the matter proceeded to trial.
 {¶ 9} During trial appellee called the following witness: Detective Timothy J. Hartmeyer; Diana L. Price, property clerk for the Muskingum County Sheriffs Office; Robin Roggenbeck, forensic scientist and latent fingerprint examiner; Renee Hammers, the victim; Deputy Craig Knox; Staci Hammers, daughter of the victim; Deputy Sergeant Pat Keck; Deputy Roy Cunningham, Jr.; Ronald Sims; Ryan Adams; Jeremy Clapper; *Page 5 
and Detective Matt Luty. Appellant presented an alibi defense, and called the following witnesses: Elizabeth Maxwell, appellant's grandmother; Christina Beach, appellant's mother; and Christopher Maxwell, appellant's uncle. Appellant also testified in his defense. Appellant was found guilty of counts one (1) and two (2), the aggravated burglary with a firearm specification and theft of a firearm charges. He was found not guilty on the remaining charges. Appellant was sentenced to an aggregate term of sixteen (16) years in prison. Appellant appeals, setting forth one assignment of error.
 {¶ 10} "THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO THE FAILURE OF COUNSEL BELOW TO KEEP PREJUDICIAL AND INADMISSIBLE EVIDENCE FROM REACHING THE JURY."
 I {¶ 11} Appellant, in his sole assignment of error, argues that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of hearsay testimony. We disagree.
 {¶ 12} "A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 13} "In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly *Page 6 
deferential. Bradley, supra at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 14} "In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. `Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel.' State v. Carter (1995), 72 Ohio St3d 545, 558, 651 N.E.2d 965, (citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court `need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' Bradley, supra. at 143, 538 N.E.2d 373 (quotingStrickland, supra. at 697)." State vs. Rembert, Richland App. No. 04 CA 66, 2005-Ohio-4718, at ¶¶ 18-20.
 {¶ 15} Appellant argues five instances in which he claims hearsay evidence was offered with no objection by his trial counsel, thereby rendering his trial counsel ineffective.
 {¶ 16} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." When an out-of-court statement is offered without reference to its truth, it is not hearsay. State v. Lewis (1970), 22 Ohio St.2d 125, 132-133,258 N.E.2d 445. *Page 7 
 {¶ 17} First, appellant argues that the testimony of the deputy relative to the .357 magnum stolen from the Hammers' residence was hearsay because it was based upon an out of court statement made to the deputy by Mrs. Hammers. At trial, Deputy Craig Knox testified that Renee Hammers and her husband told him that a Smith and Wesson magnum revolver .357 caliber was missing from their house.
 {¶ 18} Assuming, arguendo, that such testimony was hearsay, we find its admission was harmless. Renee Hammers testified at trial that she saw appellant take her gun, which was a .357 magnum, from her house on the night in question. In addition, Ryan Adams testified that appellant came out of Hammers' house with a .357 Smith and Wesson in a bag. Both were subject to cross-examination.
 {¶ 19} Second, appellant argues that Detective Lutz's testimony that Mrs. Hammers identified appellant from a photo array was inadmissible hearsay. However, we find that such testimony was not inadmissible since Mrs. Hammers testified at trial and was subject to cross-examination on her selection of appellant from the photo array. See State v.Nevins, Montgomery App. No. 21379, 2007-Ohio-1511 and Evid. R. 801(D). We further note that Mrs. Hammers positively identified appellant in court. Therefore, even assuming there was error, such error was harmless.
 {¶ 20} Third, appellant argues that the testimony of Staci Hammers regarding Mrs. Hammers' positive identification of Adams when Staci showed Mrs. Hammers Adams' photo was hearsay. We agree with appellee that Staci's testimony was not hearsay because it was not offered for the truth of the matter asserted, but rather, was offered to explain why and how the investigation eventually led to Adams. Staci *Page 8 
Hammers testified that once her mother identified Adams as the person who held a gun to her mother's head, she went to the Sheriffs Office with such information.
 {¶ 21} Fourth, appellant argues that Detective Lutz's testimony regarding the statements received from Adams and Sims in which they both implicated appellant was hearsay. While such statements may have been hearsay, there is no violation of the confrontation clause if the declarant testifies at trial. See State v. Keenan (1998),81 Ohio St.3d 133, 1998-Ohio-459, 689 N.E.2d 929. Both Adams and Sims, the declarants, testified at trial in the case sub judice. Thus, the admission of their statements to Deputy Lutz was not constitutional error. SeeKeenan, supra.
 {¶ 22} Finally, appellant also argues that "hearsay testimony concerning the origin of `known' fingerprints was presented at trial by the expert called on behalf of the government . . ." While appellant, in his brief, refers to an "expert," the pages in the transcript that appellant cites us to in his brief are from the testimony of Diana Price, the property clerk for the Muskingum County Sheriff's Office. Appellant does not direct this Court to any portion of the testimony of Robin Roggenbeck, the latent print examiner who is a forensic scientist and who was the State's expert at trial. Thus, it is unclear from appellant's brief what exactly is the alleged error.
 {¶ 23} However, assuming, arguendo, that trial counsel erred in failing to object to inadmissible hearsay testimony including the alleged hearsay relating to the origin of fingerprints, we find such error harmless. There was overwhelming evidence in the case sub judice of appellant's guilt even without the fingerprint evidence.
 {¶ 24} Renee Hammers, the victim in this case, positively identified appellant as one of the two men who held her at gunpoint and burglarized her home. She further *Page 9 
testified that appellant took a .357 magnum gun from her home. Ronald Sims, Jeremy Clapper, and Ryan Adams, appellant's co-defendants, all testified in detail about the plan to burglarize the Hammers' residence. Adams testified in detail about the burglary itself, essentially corroborating the testimony of Renee Hammers.
 {¶ 25} Based upon the overwhelming evidence of appellant's guilt, we find that even if the trial counsel erred in failing to object to inadmissible hearsay, any such error was harmless. The outcome of appellant's trial would not have been different had the allegedly hearsay testimony been objected to by trial counsel and deemed inadmissible.
 {¶ 26} Accordingly, appellant's sole assignment of error is overruled.
 {¶ 27} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.
 Edwards, J. Farmer, P.J. and Wise, J. concur *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Counts one (1) through four (4) arose out of the June 23, 2005 incident. Counts five (5) through seven (7) arose out of a prior burglary at the Hammers' residence on October 9, 2002. *Page 1